UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------x

In re RAM DISTRIBUTION GROUP LLC,       Case No. 8-19-72701-las
d/b/a/ TAL DEPOT,                       Chapter 11

                                     Debtor.

----------------------------------------x

## STIPULATION RE FUNDS: AND ORDER THEREON

Ram Distribution Group LLC d/b/a/ Tal Depot (the "Debtor"), as debtor and debtor-in-possession in the Bankruptcy Case (as defined below) pending in the Bankruptcy Court (as defined below), and PayPal, Inc., sometimes doing business as "Braintree" ("PayPal"), by and through their respective counsel, hereby enter into this Stipulation re Funds (the "Stipulation"), with reference to the following:

A.      On or about April 12, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor's bankruptcy case is titled *In re Ram Distribution Group LLC d/b/a Tai Depot,* and is currently pending in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") as case number 8-19-72701-las (the "Bankruptcy Case").

B.      PayPal is a payment processor. Prior to commencement of the Bankruptcy Case, the Debtor utilized the services and software systems of PayPal to facilitate the processing of online payments from customers. In or about June 2016, the Debtor and PayPal, through its Braintree division ("Braintree"), entered into that certain Payment Services Agreement (as at any time amended, superseded or replaced, together with the ancillary agreements referred to therein, collectively the "Braintree Agreement") found on https://www.braintreepayments.com/legal/payment-services-agreement. The Debtor and PayPal also entered into that certain PayPal User Agreement found on

1

https://www.paypal.com/us/webapps/mpp/ua/useragreement-full (as at any time amended, superceded, or replaced, together with the ancillary agreements referred to therein, collectively the "PayPal User Agreement") (the Braintree Agreement, the PayPal User Agreement and ancillary agreements referred to therein are collectively referred to herein as the "PayPal Agreements"). The Debtor became bound to the PayPal Agreements upon: (i) the creation of an account(s) with PayPal, including without limitation the Braintree division (each such account of the Debtor, a "PayPal Account" and collectively, the "PayPal Accounts"); or (ii) use of PayPal's processing services. The PayPal Agreements govern the obligations of the Parties with respect to payment processing services provided by PayPal, including its Braintree division, including services by which the Debtor has the ability to accept credit cards, debit cards, and other payment methods on a website or mobile application, gateway services offered by PayPal, including its Braintree division, which provide the Debtor with the software and connectivity required to allow real-time secure data transmission for processing of credit and debit card payments on a website or mobile application, a bank-sponsored merchant account, fraud protection tools, recurring billing functionality, payment card storage, foreign currency acceptance, white glove customer support, and other software, APis and services and technology, all as more fully described in the PayPal Agreements.

C. Pursuant to the PayPal Agreements, PayPal granted the Debtor a non-exclusive license to use PayPal's proprietary platforms and payment systems software and other software (collectively, the "PayPal Systems"). The Debtor utilized (and continues to utilize) the PayPal Systems provided by PayPal to process online purchases and related transactions (collectively, the "Transactions"). In exchange for its processing and other services, PayPal receives a fee for each Transaction or based upon products provided by PayPal.

D. PayPal contends that the PayPal Agreements grant to PayPal the ability to hold funds received from any Transaction (as such funds change, collectively, the "Funds")

that would otherwise be remitted to the user, here the Debtor, and in the ordinary course to utilize Funds available represented by the PayPal Accounts to offset any liability payable by or through PayPal for valid refunds, reversals, credit card network fees, fines and/or penalties and chargebacks with respect to the Transactions (collectively, the "Chargebacks"), as well as other fees and charges payable to PayPal under the PayPal Agreements (collectively, the "PayPal Charges"). Under the PayPal User Agreement, PayPal also contends that it is also granted a security interest in the PayPal Accounts Funds, and under the Braintree Agreement, PayPal contends that is granted a security interest in "Reserves" as defined therein. PayPal also asserts that it has, among other rights against the Debtor under the PayPal Agreements, rights of indemnity, recoupment and setoff.

E.  Under the rules and regulations governing acceptance of credit cards (e.g. Visa, MasterCard, American Express, Discover and debit network branded payment cards) (collectively, the "Cards") in the credit card network industry (collectively, the "Card Rules"), pursuant to the PayPal Agreements, the fees, fines and penalties owing to the Cards companies on Cards Transactions are charged through to the Debtor, and the Debtor is required to pay those fees, fines or penalties based on each Transaction. Certain fees and charges are automatically paid through the PayPal System at the end of each month by a debit against the Debtor's bank account(s) linked to its PayPal Accounts and other fees and charges are automatically paid from Transaction funds.

F.  PayPal (i) remains (or may remain) liable for Chargebacks for 180 days following delivery of goods or services under sale Transactions; and (ii) pursuant to the PayPal Agreements, the Debtor and/or the Estate is liable to indemnify PayPal for all Chargebacks and PayPal Charges related to the processed Transactions and the PayPal Agreements. In the usual course of business, Chargebacks are "netted" against otherwise available Transaction funds (which may give rise to a negative PayPal Account balance); and in the case of Braintree, if there is a negative on any given day, that negative is first "netted" from Transaction funds received that day, and if there remains a negative, that

negative is in the ordinary course withdrawn automatically from the Debtor's bank account(s) tied to the linked PayPal Accounts.

G.      Prior to the commencement of the Bankruptcy Case, PayPal received certain notices and/or demands with respect to the PayPal Accounts from alleged creditors of the Debtor, asserting among other things, security interests or other liens in the Debtor's interest relating to the PayPal Accounts and/or Funds. Such notices and/or demands (collectively, the "Notices") were received from Influx Capital LLC, Kash Capital LLC, Alfa Advance LLC, App Group International and Advanced Merchant Services and/or their respective representatives, and possibly other entities (collectively, the "Third Parties"). As a result of these Notices, and pursuant to PayPal's other rights under the PayPal Agreements, certain holds and reserves were established prior to the Bankruptcy Case, subject to PayPal's rights. PayPal believes that disputes may exist as between the Third Parties as to their respective priority, and that other creditors of the Debtor, such as KeyBank (the "Lender"), may assert an interest.

H.      From and after the Petition Date, the Debtor has processed and continues to process some customer purchases through PayPal (through the Braintree division) pursuant to the PayPal Agreements and to use the PayPal Systems. From and after the Petition Date, PayPal has also processed Chargebacks under the PayPal Systems, some of which relate to pre-petition Transactions and some of which relate to post-petition Transactions. Such processing occurs automatically under the PayPal Systems. However, certain Chargebacks, both pre-petition and post-petition, and balances due as a result of refunds the Debtor itself issued could not be processed by debit to the Debtor's bank account tied to the Braintree division PayPal Account, creating a "negative." Chargebacks continue to occur. PayPal Charges have also accrued and continue to accrue as a result of ongoing Transactions.

I.      As of the Petition Date, the Funds represented by the PayPal Accounts with Braintree in reserve were $68,667.38 (the "Pre-Petition Funds"); there was a "negative" of $4,360.59 owed to Braintree with respect to the Braintree division PayPal Accounts as a

result of Chargebacks (the "Pre-Petition BT Negative"); and there was a "negative" of approximately $2,200 owed to PayPal with respect to the non-Braintree division PayPal Accounts relating to Chargebacks (the "'Pre-Petition PP Negative").

J. As of May 21, 2019 at approximately 10:00 a.m. central time, the Funds represented by the PayPal Accounts with Braintree based upon post-petition Transactions initiated by the Debtor was $20,676.54 (the "Post-Petition Funds"); there was a "negative" based upon post-petition Chargebacks of $20,596 owed to Braintree with respect to the Braintree division PayPal Accounts, of which $500.78 relates to post-petition sales Transactions (such post-petition negative, as the same may increase, the "Post-Petition BT Negative"); and there was a "negative" of approximately $206 based upon post-petition Chargebacks owed to PayPal with respect to the non-Braintree division PayPal Accounts relating to Chargebacks (such post-petition negative, as the same may increase, the "Post-Petition PP Negative"). The Post-Petition BT Negative and the Post-Petition PP Negative are subject to increase due to ongoing Transactions, Chargebacks and PayPal Charges.

K. PayPal Charges due to it on or about May 3, 2019 for April 2019 Transactions are $2,915.30 (the "May PP Charges"). Based upon May 2019 Transactions through May 20, 2019, PayPal estimates approximately $2,500-$3,000 in processing fees for May; and approximately the same or smaller amount for June 2019.

L. PayPal contends that the PayPal Accounts have been limited in accordance with the PayPal Agreements, and as expressly authorized pursuant to 11 U.S.C. §§ 542(b) and 553.

M. On May 7, 2019, the Debtor filed its MOTION PURSUANT TO 11 U.S.C. §363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001 APPROVING STIPULATION WITH PAYPAL, INC. REGARDING ADEQUATE PROTECTION AND ANCILLARY RELIEF [Doc. No. 38] (the "Motion"). The Lender and others objected to the Motion. At the hearing on the Motion held on May 16, 2019, the Bankruptcy Court ordered PayPal to payover to the Debtor the sum of $20,000 from the Funds represented by the

PayPal Accounts, without prejudice to the rights of PayPal, the Debtor or other parties in interest, and continued the hearing on the Motion until May 23, 2019 to allow the parties to attempt to resolve matters as more fully set forth on the record at the May 16, 2019 hearing. Pursuant to the Bankruptcy Court's order, PayPal has made such $20,000 payment to the Debtor (the "$20,000 Payment").

N. By this Stipulation, the parties desire to resolve certain of the issues between them relating to the PayPal Accounts, and to resolve the Motion and objections thereto. This Stipulation is intended to supercede and replace the "Agreement" as referred to in the Motion.

NOW, IN CONSIDERATION OF THE ABOVE STATED PREMISES, THE PARTIES HERETO STIPULATE, CONSENT AND AGREE AS FOLLOWS:

1. The terms of this Stipulation and the effectiveness thereof are subject to the approval of the Bankruptcy Court. The Debtor agrees to promptly take all actions reasonably necessary to seek approval of this Stipulation.

2. PayPal shall be authorized to immediately, debit, setoff, charge or otherwise pay the Pre-Petition BT Negative (i.e., the amount of $4,360.59) out of the Pre-Petition Funds. After effectuating the same, and taking into the $20,000 Payment already made as set forth above, the balance of Pre-Petition Funds is $44,306.79 (the "Net Pre-Petition Funds"). Promptly after approval of this Stipulation by the Bankruptcy Court, PayPal shall pay to the Debtor the Net Pre-Petition Funds.

3. PayPal shall be authorized to immediately, debit, setoff, charge or otherwise pay (i) $10,548.39 of the Post-Petition BT Negative (comprised of $500.78, plus ½ of the remaining $20,095.22 of the Post-Petition BT Negative) and (ii) the May PP Charges (i.e., $2,915.30) in each case out of the Post-Petition Funds. In addition, out of the Post-Petition Funds, PayPal shall be entitled to retain the sum of $5,000 (the "Reserve"); and from the Reserve, PayPal shall be entitled to debit, setoff, charge or otherwise pay the PayPal Charges that accrue for May and June 2019 as the same shall become due in the ordinary

course, as well as any Chargebacks incurred or processed between and through May 21, 2019 at 10:00 a.m. central time and June 30, 2019 based on post-petition sales Transactions. After effectuating the foregoing provisions set forth in this Paragraph, the balance of Post- Petition Funds is $2,212.85 (the "Net Post-Petition Funds"). Promptly after approval of this Stipulation by the Bankruptcy Court, PayPal shall pay to the Debtor the Net Post-Petition Funds. On or about July 10, 2019, PayPal shall pay to the Debtor the remaining portion of the Reserve (if any).

4. With respect to Post-Petition sale Transaction proceeds relating to post-petition sales by the Debtor processed by PayPal after May 21, 2019 at 10:00 a.m. central time and not otherwise represented by the accounting in Paragraph 3 above, PayPal shall promptly pay the amounts represented by such sales, if any, to the Debtor; provided, such proceeds may be offset by PayPal by any Chargebacks relating to any post-petition sales and not otherwise represented by the accounting above, it being the intention of the Debtor and PayPal to reflect the above concepts as to additional sales and Chargebacks between and through May 21, 2019 at 10:00 a.m. central time and the date of the termination of the PayPal Accounts and related processing as provided below.

5. The parties hereto recognize that the allocations of PayPal Charges as provided above is for convenience of the parties and for the ease of effectuating the transactions set forth herein. All payments by Pal Pay as provided herein shall be made by transfer to the Debtor's bank account at Signature Bank, Account No. 1503570323.

6. The Debtor shall not process any further Transactions through the PayPal Accounts. PayPal may take such actions with respect to the PayPal Accounts to better assure that no processing of Transactions by the Debtor shall occur, including without limitation closing the PayPal Accounts, and all access to or use of PayPal Systems, or PayPal's websites, software, systems (including any networks and servers used to provide any of the PayPal services) operated by PayPal or on its behalf or some or all of the PayPal services, in each case relating to the PayPal Accounts, shall be deemed terminated without

further notice. To the extent applicable, the PayPal Agreements and ancillary agreements shall be deemed rejected under Section 365 of the Bankruptcy Code. The foregoing is not intended to preclude PayPal's processing of Chargebacks as may be required by it.

7. Relief from the automatic stay under Bankruptcy Code section 362 is hereby granted, and the stay is hereby terminated, *nunc pro tunc* to the Petition Date, to the extent such stay is applicable, to permit PayPal and or its affiliates, agents or representatives to take any and/or all of the actions set forth or as permitted in this Stipulation, including without limitation to effectuate the provisions of Paragraphs 2, 3, 4, 5 and 6.

8. [Deleted.]

9. This Stipulation is without prejudice to any claims that PayPal has against the Debtor, the Estate, or other person or entity, including without limitation for indemnity for Chargebacks and PayPal Charges. Without limiting the foregoing, the parties hereto recognize that by the terms of the Stipulation above, PayPal has existing and ongoing claims for "negatives" as a result of Chargebacks and related PayPal Charges. The foregoing claims as against the Debtor and/or the Estate shall be addressed in the Bankruptcy Case.

10. A signed copy of this Stipulation shall have the same force and effect as the original. This Stipulation may be executed in counterparts, each of which is deemed to be an original, but such counterparts together shall constitute one and the same instrument.

IT IS SO STIPULATED.

Dated: May 23, 2019  
    Far Rockaway, New York

GULKOWITZ BERGER LLP

By: /s/ Shaya M. Berger  
Shaya M. Berger, Esq.  
*Attorneys for Debtor*  
544 Oak Drive  
Far Rockaway, New York 11691  
Tel: (212) 208-0006  
sberger@gulkowitzberger.com

Dated: May 23, 2019  
    San Diego, California

DINSMORE & SHOHL LLP

By: /s/ Mikel R. Bistrow  
Mikel R. Bistrow, Esq.  
*Attorneys for PayPal, Inc.*  
655 W. Broadway, Suite 800  
San Diego, California 92101  
Tel: (619) 400-0500  
mikel.bistrow@dinsmore.com

SO ORDERED:



Dated: June 14, 2019  
**Central Islip, New York**

_Louis A. Scarcella_  
**Louis A. Scarcella**  
**United States Bankruptcy Judge**